# IN THE UNITED STATES DISTRICT COURT FOR THE NOTHERN DISTRCIT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JENNIFER ALFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action File No: |
| ) | |
| v. ) | |
| ) | **Jury Trial Demanded** |
| EMORY UNIVERSITY ) | |
| SCHOOL OF MEDICINE ) | |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

**COMES NOW** Jennifer Alff ("Ms. Alff" or "Plaintiff") by and through her undersigned counsel of record, and hereby files this Complaint against Emory University School of Medicine ("EUSM" or "Defendant") seeking relief and damages available under law, based on the following hereinbelow.

## NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant for its violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §1981 ("Section 1981"), the Age Discrimination in Employment Act ("ADEA") and the Family Medical Leave Act ("FMLA").

1

## PARTIES

2. Ms. Alff is a citizen of the United States and a resident of the State of Georgia.

3. Ms. Alff is a white adult female.

4. EUSM is a medical school located in Atlanta, Georgia consisting of medical and health professional students, residents, fellows, physicians, faculty and other staff members.

5. At all times relevant to this Complaint, Plaintiff was employed by EUSM.

6. EUSM is a part of Emory University, a domestic non-profit corporation registered with the Georgia Secretary of State.

## SUBJECT MATTER JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction concerning this civil action pursuant to 28 U.S.C. §§ 1331 and 1334.

8. Venue is proper in this district and division under 28 U.S.C.A. § 1391, as Defendant conducts business in, and the alleged unlawful acts occurred in this district and division.

## PERSONAL JURISDICTION

9. EUSM may be served with process concerning this civil action through its registered agent, listed with the Georgia Secretary of State: Amy Adelman., Emory University, 201 Dowman Drive, 312 Administration Building, Atlanta, GA, 30322.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

10. On April 18, 2023, Plaintiff filed a Charge of Discrimination against EUSM with the Equal Employment Opportunity Commission ("EEOC") (See Exhibit No. 1).

11. On May 9, 2024, the EEOC issued Plaintiff a Determination and Notice of Rights letter for EEOC Charge Number 410-2023-07359 ("Right to Sue Letter"). (See Exhibit No. 2).

12. Plaintiff has filed this present civil action within 90 days of receiving the Right to Sue Letter concerning her EEOC Charge against EUSM.

## FACTUAL ALLEGATIONS

13. In or about April of 2001 Ms. Byers began her employment with EUSM.

14. Throughout her employment with EUSM Ms. Alff worked in the following positions in the Department of Urology during the corresponding periods:

    (a) Residency Program Coordinator I from February 2002 through August 2007.

    (b) Residency Program Coordinator II from September 2007 through September 2011.

    (c) Program Coordinator from September 2011 to the effective date of her termination, October 26, 2022.

15. During her tenure with EUSM, it provided her with authorization to access its electronic medical records system ("the system" or "EMRS"). This authorization included assigning her a log in username that allowed her to create a unique personalized password.

16. In August of 2022, EUSM notified Ms. Alff that it discovered that she had allegedly accessed patient records in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). Ms. Alff was and remains appalled by these allegations which sought to irreparably harm her reputation, built over her 21-year career with EUSM.

17. From July 2002 to July 2019 Ms. Alff worked for Dr. Ritenour, a faculty member at EUSM, as his Academic and Clinical Administrative Assistant. During this period Dr. Ritenour provided Ms. Alff with authorization to the EMRS to access patient records.

18. Notwithstanding, at all periods of time during her employment Ms. Alff had authorization from either doctors, managers, supervisors or other EUSM personnel to use the EMRS to access patient records.

19. After a receiving a complaint from Ms. Alff's manager in August of 2022, on September 15, 2022, Emory University Hospital's Chief Compliance Officer performed audits for the years 2005-2022, which allegedly revealed that Ms. Alff accessed Emory's EMRS three thousand six hundred and seventy-three (3,673) times with the last entry on March 30, 2022.

20. Over a 17-year period, this equates to 216 times per year, which is not an unreasonable number considering that access to the EMRS, occurs on a regular basis.

21. The results of the audit failed to draw any distinction between authorized access and any alleged unauthorized access by Ms. Alff over the 17-year period.

22. The results of the audit also failed to provide her with evidence that the medical records she did access was for a person for whom she had no authority to access.

23. On October 26, 2022, Ms. Alff received a letter from Tari Owi ("Ms. Owi") an administrator in the Department of Urology effectively terminating Ms. Alff's employment immediately, effective that day for alleged unauthorized access of patient medical records over a 17-year period.

24. Prior to her termination, at no time during her 17-year career did EUSM ever flag and provide notification to Ms. Alff that she had accessed patient records without authorization.

25. Ms. Owi is an African American adult woman.

26. At the time of Ms. Alff's termination on October 26, 2022 Ms. Owi was in her early 30s.

27. At the time of Ms. Alff's termination on October 26, 2022 Ms. Alff was in her early 50s.

28. Prior to being terminated Ms. Owi mistreated Ms. Alff because of her race and age:

(a)  She was often unfairly critical of Ms. Alff concerning her interactions with other employees, in one instance telling her that she needed to work on her "love languages" in the workplace.

(b) She also kept Ms. Alff on the 6th floor, isolated and separated from the rest of the employees in the department.

(c)  In one instance, when Ms. Alff completed a planning event, Ms. Owi unfairly openly criticized and showed disdain to her in front of others, causing Ms. Alff's embarrassment.

(d)  Additionally, Ms. Owi would regularly assign Ms. Alff menial tasks such as cleaning out closets and consolidating boxes, while not assigning this task to others.

29.  In August 2022, two new African American younger female employees, Keyana Davis ("Keyana") and Leslie [Last Name Unknown] ("Leslie") were onboarded as employees of EUSM's Urology Department directly under Ms. Owi's supervision and management.

30.  Shortly after Keyana and Leslie's onboarding, during a staff meeting Ms. Owi commented, "I'm finally getting the dream team I was promised; it's all coming together."

31. As soon as Keyana and Leslie began, they began doing work very similar to Ms. Alff's work.

32. Ms. Alff was even ordered to train these employees on her job duties.

33. On or around August of 2022, in addition to having several of her job duties taken away, Ms. Alff was intentionally left out of staff meetings.

34. On or around August of 2022, Ms. Alff began to realize that efforts were being made to marginalize her in order to coerce her to quit.

35. At or around August of 2022 after ostensibly waiting 17 years, EUSM suddenly discovered that Ms. Alff had allegedly accessed patient medical records without authorization, in violation of the Health Insurance Portability and Accountability Act ("HIPPA").

36. When her efforts to force Ms. Alff to resign failed, Ms. Owi filed a baseless complaint against Ms. Alff concerning unauthorized access to the EMRS.

37. On or around October 21, 2022, Ms. Alff submitted a request for FMLA leave and EUSM confirmed receiving the FMLA leave request on said date.

38. On October 26, 2022, EUSM terminated Ms. Alff's employment.

## PLAINTIFF'S CAUSES OF ACTION

### Count I

### EUSM Terminated Ms. Alff's Employment

### because of her race in violation of Title VII and Section 1981

39. Plaintiff incorporates by reference the preceding paragraphs as though set forth fully and separately herein.

40. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

41. Ms. Alff is white and Ms. Owi is African-American.

42. As the Administrator of the Urology Department Ms. Owi was Ms. Alff's supervisor or manager.

43. Ms. Owi mistreated and showed disdain towards Ms. Alff because she was not of the same race as Ms. Owi.

44. In or about August 2022, Ms. Owi hired two new African American employees to work in the Urology Department.

45. On or about the same period of time Ms. Owi lodged a complaint against Ms. Alff falsely accusing her of accessing patient medical records without authorization in violation of HIPPA over a 17-year period.

46. Upon information and belief, if this was true other non-white individuals also accessed records without authorization over a 17-year period and were not terminated from EUSM.

47. Accessing medical records without authorization is not the real reason for Ms. Alff's termination on October 26, 2022, she was terminated by Ms. Owi because of Ms. Alff's race.

48. Ms. Alff was qualified to do her job as program coordinator at all periods of time relevant to this Complaint.

49. The timing of Ms. Alff's termination, right after two African American employees were hired is suspicious.

50. Ms. Owi's mistreatment of Ms. Alff are and pieces of evidence from which an inference of discriminatory intent might be drawn.

51. Ms. Owi systematically treated similarly situated African Americans better than Ms. Alff.,

52. EUSM reasons for terminating Ms. Alff are pretextual.

53. EUSM terminated Ms. Alff because of her race.

## Count II

**Ms. Alff's race was a motivating factor in EUSM's decision to terminate Ms. Alff's Employment: this violates Title VII**

54. Plaintiff incorporates by reference the preceding paragraphs as though set forth fully and separately herein.

55. Ms. Alff is white and Ms. Owi is African-American.

56. As the Administrator of the Urology Department Ms. Owi was Ms. Alff's supervisor or manager.

57. Ms. Owi mistreated and showed disdain towards Ms. Alff because she was not of the same race as Ms. Owi.

58. Ms. Alff's race was a motivating factor in leveling false and outdated allegations against her concerning accession patient information with authorization.

59. Ms. Alff's race was also a motivating factor in EUSM final decision to terminate her employment effective October 26, 2022.

## Count III

**EUSM Terminated Ms. Alff's Employment because of her age in violation of the ADEA**

59. Plaintiff incorporates by reference the preceding paragraphs as though set forth fully and separately herein.

60. Ms. Alff was in her early 50's, therefore she was an induvial over the age of 40 at the time of her termination.

61. Ms. Alff suffered an adverse employment action in that EUSM terminated her from her employment effective October 26, 2022.

62. Ms. Alff was a qualified individual at the time that she was termiated from her employment.

63. Upon information and belief, if this was true other non-white individuals also accessed records without authorization over a 17 year period and were not terminated from EUSM.

64. Ms. Alff was also replaced by an individual under the age of 40.

65. Prior to her being replaced by said individual the person who replaced her, Ms. Owi, who is in her 30's stated that "I'm finally getting the dream team I was promised; it's all coming together" inferring that Ms. Alff was not part of the dream team because of her age.

66. EUSM terminated Ms. Alff because of her age in violation of the ADEA.

## Count IV

## EUSM interfered with Ms. Alff's rights under

## the FMLA thus violating the FMLA

67. Plaintiff incorporates by reference the preceding as though set forth fully and separately herein.

68. Ms. Alff was entitled to a benefit under the FMLA.

69. Ms. Alff was employer denied an FMLA benefit.

70. Ms. Alff began working for EUSM in April 2001 so she was eligible for FMLA leave; she worked for the company for 12 months and had at least 1,250 hours of service during that 12-month period.

71. EUSM is a covered employer under the FMLA.

72. As a result of EUSM's baseless allegations concerning accessing patient records without authority, Ms. Alff was severely stressed out and this triggered anxiety, depression, and high blood pressure, which she had previously been treated for as a serious health condition, as such she requested FMLA leave.

73. In compliance with the FMLA, Ms. Alff provided EUSM with her reason for the need for FMLA-qualifying leave as soon as practicable.

74. Although EUSM confirmed receiving her request for FMLA leave, due to a medical condition that necessitated FMLA-qualifying leave, on October 26, 2022, it terminated her employment.

75. EUSM violated the FMLA by denying Ms. Alff's request for FMLA leave.

## Count V

**EUSM terminated Ms. Alff for requesting FMLA leave, thus violating the FMLA**

76. Plaintiff incorporates by reference the preceding as though set forth fully and separately herein.

77. Ms. Alff made a valid request for FMLA leave.

78. Shortly after making a valid request for FMLA leave EUSM terminated her employment.

79. EUSM terminated Ms. Alff's employment in retaliation for making a request for FMLA leave.

## Count VI

**Punitive Damages**

80. Defendant is liable to Plaintiff for punitive damages pursuant to Title VII and Section 1981 because Defendant engaged in discrimination with malice or

reckless indifference to Plaintiff's federally protected rights, and the discriminatory conduct was approved or countenanced by Defendant's upper-level managers.

81. Upon information and belief EUSM's upper-level managers were aware of the discriminatory conduct being engaged in against Ms. Alff, and they not only engaged in this conduct directly, but they also approved and ratified the conduct.

## JURY TRIAL DEMAND

82. Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the above-stated claims that Defendant has violated Plaintiff's rights afforded to her under Title VII, Section 1981, the ADEA, and the FMLA, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to compensation for his emotional distress, embarrassment, mental anguish, and inconvenience;

B. Back pay and lost benefits and privileges of employment;

C. Actual losses;

D. Liquidated damages;

E. Punitive damages to the extent allowed by law;

F. Attorneys' fees and the costs of this action;

G. Prejudgment and post-judgment interest at the highest lawful rate; and

H. Such further relief as the Court deems just and proper.

Respectfully submitted this 7th day of August 2024.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: s/ *Jermaine A. Walker*

Jermaine "Jay" A. Walker
HKM Employment Attorneys LLP
3344 Peachtree Road NE, Suite 800
Office No. 35
Atlanta, GA 30326
(Telephone) 404-301-4020
(Fax) 404-301-4020
jwalker@hkm.com

**Attorney for Plaintiff**